# Summons

In the matter of  Captive Alternatives LLC

Internal Revenue Service *(division)*   Large Business and International

Industry/Area *(name or number)*   Pass-Through Entities

Periods  January 1, 2011 through the date of full compliance with the summons

**Exhibit**

2

**The Commissioner of Internal Revenue**

To   Captive Alternatives LLC

At   PO Box 467519, Atlanta GA 31146-7519

You are hereby summoned and required to appear before  Charles Edwards, Employee ID 1000255559 or designee
an officer of the Internal Revenue Service, ~~to give testimony and~~ to bring with you and to produce for examination the following books,
records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any
offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the
periods shown.

See Attachments 1, 2, 3, and 4.

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear**
2888 Woodcock Blvd., Atlanta GA, 30341-4002, Phone 470-719-6573

**Place and time for appearance at** 2888 Woodcock Blvd., Atlanta GA, 30341-4002, Phone 470-719-6573

on the 2          day of November          , 2021      at 9:00                    o'clock a      .m.
                                   *(year)*

**Issued under authority of the Internal Revenue Code this** 14      day of October          , 2021
                                                                           *(year)*

| Signature of issuing officer | Robert W. Meyer  Digitally signed by Robert W. Meyer Date: 2021.10.14 13:59:34 -05'00' | Title |
| --- | --- | --- |
| | | Internal Revenue Agent |
| Signature of approving officer *(if applicable)* | Jonathan L. Grieco  Digitally signed by Jonathan L. Grieco Date: 2021.10.14 15:35:06 -05'00' | Title |
| | | Supervisory Internal Revenue Agent |

Form **2039** (Rev. 3-2020)          Catalog Number 21405J          publish.no.irs.gov          Department of the Treasury - Internal Revenue Service
**Part C —** to be given to noticee

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties.

(1) General notice - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer unless such contact occurs during a period (not greater than 1 year) which is specified in a notice which—

(A) informs the taxpayer that contacts with persons other than the taxpayer are intended to be made during such period, and

(B) except as otherwise provided by the Secretary, is provided to the taxpayer not later than 45 days before the beginning of such period.

Nothing in the preceding sentence shall prevent the issuance of notices to the same taxpayer with respect to the same tax liability with periods specified therein that, in the aggregate, exceed 1 year. A notice shall not be issued under this paragraph unless there is an intent at the time such notice is issued to contact persons other than the taxpayer during the period specified in such notice. The preceding sentence shall not prevent the issuance of a notice if the requirement of such sentence is met on the basis of the assumption that the information sought to be obtained by such contact will not be obtained by other means before such contact.

(2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

(3) Exceptions. - This subsection shall not apply-

(A) to any contact which the taxpayer has authorized,

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

(C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

(1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral in effect. - For purposes of this subsection

(A) In general. -A Justice Department referral is in effect with respect to any person if-

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

(i) the Attorney General notifies the Secretary, in writing, that

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation.

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

(3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

(f) Limitation on access of persons other than Internal Revenue Service officers and employees. The Secretary shall not, under the authority of section 6103(n), provide any books, papers, records, or other data obtained pursuant to this section to any person authorized under section 6103(n), except when such person requires such information for the sole purpose of providing expert evaluation and assistance to the Internal Revenue Service. No person other than an officer or employee of the Internal Revenue Service or the Office of Chief Counsel may, on behalf of the Secretary, question a witness under oath whose testimony was obtained pursuant to this section.

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

(1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

(2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

(C) Any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

(E) any attorney;

(F) any accountant;

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

(I) any enrolled agent; and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general. - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

(1) fees and mileage to persons who are summoned to appear before the Secretary, and

(2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if

(1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

(2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. -This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421 (g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

| To | Date |
|---|---|

Address

Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

If you are the taxpayer, see important information below on the suspensions of your periods of limitation under I.R.C. section 7609(e)(1) and (e)(2).

## General Directions

1. You must file your petition to quash in the United States district court for the district where the person summoned resides or is found.

2. You must file your petition within 20 days from the date of this notice and pay a filing fee as may be required by the clerk of the court.

3. You must comply with the Federal Rules of Civil Procedure and local rules of the United States district court.

## Instructions for Preparing Petition to Quash

1. Entitle your petition "Petition to Quash Summons."

2. Name the person or entity to whom this notice is directed as the petitioner.

3. Name the United States as the respondent.

4. State the basis for the court's jurisdiction, as required by Federal Rule of Civil Procedure. See Internal Revenue Code Section 7609(h).

5. State the name and address of the person or entity to whom this notice is directed and state that the records or testimony sought by the summons relate to that person or entity.

6. Identify and attach a copy of the summons.

7. State in detail every legal argument supporting the relief requested in your petition. See Federal Rules of Civil Procedure. Note that in some courts you may be required to support your request for relief by a sworn declaration or affidavit supporting any issue you wish to contest.

8. Your petition must be signed as required by Federal Rule of Civil Procedure 11.

9. Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4.

10. At the same time you file your petition with the court, you must mail a copy of your petition by certified or registered mail to the person summoned and to the IRS. Mail the copy for the IRS to the officer whose name and address are shown on the face of this summons. See 7609(b)(2)(B).

The court will decide whether the person summoned should be required to comply with the summons request.

## Suspension of Periods of Limitation

If you are the taxpayer being examined/investigated by this summons and you file a petition to quash the summons (or if you intervene in any suit concerning the enforcement of this summons), your periods of limitation for assessment of tax liabilities and for criminal prosecutions will be suspended pursuant to I.R.C. section 7609(e)(1) for the tax periods to which the summons relates. Such suspension will be effective while any proceeding (or appeal) with respect to the summons is pending. Your periods of limitation will also be suspended under section 7609(e)(2) if the summoned person fails to fully respond to this summons for 6 months. The suspension under section 7609(e)(2) will begin 6 months after the summons is served and will continue until the summoned person finally resolves the obligation to produce the summoned information. You can contact the IRS officer identified on the summons for information concerning the suspension under section 7609(e)(2). If you contact the IRS officer for this purpose, please provide the following information: (1) your name, address, home and work telephone numbers and any convenient time you can be contacted and (2) a copy of the summons or a description of it that includes the date it was issued, the name of the IRS employee who issued it, and the name of the summoned person.

The relevant provisions of the Internal Revenue Code are enclosed with this notice. If you have any questions, please contact the Internal Revenue Service officer before whom the person summoned is to appear. The officer's name and telephone number are shown on the summons.

## Sec. 7609. Special procedures for third-party summons

(a) Notice. -

(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to proceeding to quash. -

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

(c) Summons to which section applies. -

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i); or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue law, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records. - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

(e) Suspension of Statute of Limitations. -

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. -In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

(f) Additional requirement in the case of a John Doe summons. Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The Secretary shall not issue any summons described in the preceding sentence unless the information sought to be obtained is narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph.

(g) Special exception for certain summonses. -

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

(h) Jurisdiction of district court; etc. -

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g).- The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

(i) Duty of summoned party. -

(1) Recordkeeper must assemble records and be prepared to produce records. On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

(j) Use of summons not required. -

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

## Suspension of Corporate Taxpayer's Period of Limitations on Assessment If a Court Proceeding is Brought Regarding a Designated or Related Summons

The IRS may issue designated or related summonses to examine the tax liability of certain corporations. A designated summons will be identified by a statement at the top of the summons that reads: "This is a designated summons pursuant to IRC 6503(j)." A related summons will be identified by a similar statement at the top of the summons indicating that it is a related summons issued pursuant to I.R.C. sec. 6503(j).

If you are a corporate taxpayer and the IRS has issued a designated or related summons to investigate your tax liability, your period of limitations on assessment will be suspended if a court proceeding concerning the summons is begun. This suspension will be effective on the day the court proceeding is brought. If the court orders any compliance with the summons, the suspension will continue until 120 days after the summoned person finally resolves his response to the summons. If the court does not order any compliance with the summons, then the period of limitations will resume running on the day after final resolution (but the period of limitations will not expire before the 60th day after final resolution).

To obtain information about the dates of the suspension under section 6503(j), you can contact the IRS officer before whom the person summoned is to appear. The officer's name and telephone number are identified on the summons.

## Sec. 6503(j). Extension in case of certain summonses

(1) In general.

If any designated summons is issued by the Secretary to a corporation (or to any other person to whom the corporation has transferred records) with respect to any return of tax by such corporation for a taxable year (or other period) for which such corporation is being examined under the coordinated industry case program (or any successor program) of the Internal Revenue Service, the running of any period of limitations provided in section 6501 on the assessment of such tax shall be suspended—

(A) during any judicial enforcement period—

(i) with respect to such summons, or

(ii) with respect to any other summons which is issued during the 30-day period which begins on the date on which such designated summons is issued and which relates to the same return as such designated summons, and

(B) if the court in any proceeding referred to in paragraph (3) requires any compliance with a summons referred to in subparagraph (A), during the 120-day period beginning with the 1st day after the close of the suspension under subparagraph (A).

If subparagraph (B) does not apply, such period shall in no event expire before the 60th day after the close of the suspension under subparagraph (A).

(2) Designated summons For purposes of this subsection—

(A) In general. The term "designated summons" means any summons issued for purposes of determining the amount of any tax imposed by this title if—

(i) the issuance of such summons is preceded by a review and written approval of such issuance by the Commissioner of the relevant operating division of the Internal Revenue Service and the Chief Counsel which—

(I) states facts clearly establishing that the Secretary has made reasonable requests for the information that is the subject of the summons, and

(II) is attached to such summons,

(ii) such summons is issued at least 60 days before the day on which the period prescribed in section 6501 for the assessment of such tax expires (determined with regard to extensions), and

(iii) such summons clearly states that it is a designated summons for purposes of this subsection.

(B) Limitation.

A summons which relates to any return shall not be treated as a designated summons if a prior summons which relates to such return was treated as a designated summons for purposes of this subsection.

(3) Judicial enforcement period. For purposes of this subsection, the term "judicial enforcement period" means, with respect to any summons, the period—

(A) which begins on the day on which a court proceeding with respect to such summons is brought, and

(B) which ends on the day on which there is a final resolution as to the summoned person's response to such summons.

(4) Establishment that reasonable requests for information were made. In any court proceeding described in paragraph (3), the Secretary shall establish that reasonable requests were made for the information that is the subject of the summons.

---

**SUMMONS ATTACHMENT 1
IN THE MATTER OF CAPTIVE ALTERNATIVES LLC**

**INSTRUCTIONS**

---

In responding to this Summons, you are required to make a diligent search of your records and documents (as defined below) that are in your possession, custody or control. This includes documents in the possession of attorneys, accountants, affiliates, advisors, representatives, or other persons directly or indirectly employed by you, hired by you, or connected with you or your representatives, and anyone else otherwise subject to your control. This also includes all records and documents created and/or maintained in the course of employment (at any business or other location) by any employee, officer, director, shareholder, partner, principal, consultant, and/or independent contractor of **Captive Alternatives** (as defined below). This further includes all documents and records used exclusively for Captive Alternative's in-house consideration and discussions of the **Risk Management Program** (as defined below).

In responding to this Summons, all requests for documents should be construed expansively rather than narrowly. All documents produced should include all attachments, exhibits, addendums, and appendices. All uses of "and" and "or" should be read as "and/or," and singular forms should be read as including plural forms, and plural forms should be read as including the singular forms.

**Each Summons Request should be separately answered. If a document is responsive to more than one request you need not provide it in response to each request if you supply a complete and legible copy in response to the first request to which the document is responsive.** Each non-identical copy is a separate "document." If a document has any change, notation, and/or modification, you are required to produce it. In addition, you are required to produce generic documents.

If you are unable to locate documents or records, then state with specificity the efforts made to locate the documents or records and the reasons such documents or records are unavailable. If the requested records or documents do not exist, so state. If the requested records or documents exist, but are not available to you, state where such documents are located and provide the name, current address, e-mail address, and telephone number of the custodian. If you have disposed of any responsive document, state when such document was disposed of, the reason for such disposition, and the identity of the persons that may have possession of a copy of such document.

If a privilege is being claimed with respect to any requested document or information, state with specificity the nature of the privilege and the extent of all allegedly privileged matters. If you object to producing only part of a document, provide us with a redacted copy and retain the original for review by a court (the part to which you object and produce the remainder). With respect to each allegedly privileged document, or portion of a document, provide the following:

1. The date appearing on such document or, if it has no date, the date or approximate date that such document was created;

2. The identity or descriptive code number, file number, title, or label of such document used by the custodian of the document to identify it for retrieval, plus the number of pages in the document;

3. The general nature and description of such document and the identity of the person who signed such document;

4. The author of such document, including name, title and address;

5. The identity of the person to whom such document was addressed and the identity of each person other than such addressee to whom such document, or a copy thereof was given or sent at any time;

6. The identity, if known, of the person having or who may have present possession, custody, or control of such document or a copy thereof;

7. Whether or not any draft, copy, or reproduction of such document contains any postscripts, notation, change, or addendum not appearing on the document itself and, if so, the response shall give the description of each such draft, copy or reproduction; and

8. The privilege or privileges claimed for the document.

As specified on the face of the Summons, unless otherwise stated the documents and information sought by this Summons are sought only **for the period from January 1, 2011 through the date of full compliance with this summons.**

To the extent documents are stored in computerized, electronic media or other machine-sensible format, including documents claimed to be privileged as discussed above, provide a copy of the electronic file according to the attached production specifications (Attachment 4).

Paper documents that are not in an electronic format may be produced in an electronic format according to the attached production specifications (Attachment 4) and include an accompanying folder containing a native copy of each document. Documents not in electronic form that contain hand-written notes on them should be considered separate from their original-source materials and separately responsive to this request for documents, as are the original-source materials.

Produced data shall be free from computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the IRS.

All productions shall be sent in a self-extracting encryption file along with the corresponding password. Alternatively, the data can be encrypted using Secure Zip and

sent along with the corresponding password. No other encryption software shall be used unless with consent of the IRS.

We request that the production be provided with the FIPS 140-2 level of encryption that requires no software to be loaded.

Productions shall be delivered on any of the following media; and must be labeled with the case name, production date, bates range (if applicable), and producing party:
- CD-ROMs and/or DVD-R formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications
- External hard drives (USB 3.0 or higher, eSATA, formatted to NTFS format) or flash drives formatted to NTFS format

Attachment 1 - Page **3** of **3**

---

**SUMMONS ATTACHMENT 2
IN THE MATTER OF CAPTIVE ALTERNATIVES LLC**

**DEFINITIONS**

---

The following definitions apply to this Summons:

1. The word "documents" or "data" refers to any materials of any kind that are written, printed, typed, reproduced graphically, visually, aurally, electronically, or by any other means, in your possession, custody, or control; including, but not limited to:
   a. Contracts, agreements, plans, papers, summaries, opinions, reports, commentaries, communications, correspondence, memoranda, minutes, notes, comments, messages, studies, graphs, diagrams, photographs, charts, projections, tabulations, analyses, questionnaires and responses, workpapers, data sheets, statistical or informational accumulations, computer databases, computer disks and formats, or worksheets, facsimiles, instant messages, voice mail, and similar and related documents, data, and materials;
   b. Video and/or audio recordings, video files, sound files, and all other information stored or processed by means of data processing equipment and capable of being retrieved in electronic, printed, or graphic form;
   c. Computer stored and generated documents or data, including, but not limited to, electronic mail (commonly referred to as "e-mail") and attachments, word processing documents, databases, and spreadsheets;
   d. Computer database information (including metadata) from document management programs or systems that track or control electronic documents described above; and
   e. Copies of any proprietary software necessary to retrieve and analyze the documents and data, plus all manuals and similar documents related to using this software, to the extent the documents are not otherwise readable with commercially available software.

2. "Communication" means any transmission of information from one person to another, including, but without limitation to the following: via face to face meetings, telephone, letter, electronic mail, electronic bulletin boards, electronic "chat rooms," electronic correspondences, instant messaging, Zoom, Skype or similar platform, teleconference, facsimile, or text.

3. The term "identify" or "provide the identity of" when used in connection with a person means provide the name, title, TIN (as defined in I.R.C. §7701(a)(41)), and current or last known business and residence address and telephone number(s).

4. The term "identify" or provide "the identity of " when used in connection with a document means provide the following:  a) the date of the document; b) the title of the document, if any; c) a description of the nature of the document (e.g., memorandum, letter) and its purpose; d) the author and/or signatory of the document;

e) the identity of the person to whom the document is directed; and f) a summary of the content of the document.

5. "Person" has the meaning as defined in § 7701(a)(1) of the Internal Revenue Code and also includes all of the person's agents and representatives.

6. "Related" person includes the persons specified in §§ 267(b), 267(c), 318 and 707(b) of the Internal Revenue Code.

7. "Indirectly" means through one or more intermediary persons, or through contractual or other legal arrangements.

8. "Affiliate" means a person (domestic or foreign) that directly or indirectly controls, is controlled by, or is under common control with, the person specified, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a person, whether through the ownership of voting securities, by contract, as trustee or executor, or otherwise.

9. **"Captive Alternatives LLC"** refers to Captive Alternatives LLC and each predecessor or successor of Captive Alternatives LLC, including, but not limited to, Captive Alternatives KY LLC.

10. **"Captive Alternatives"** refers to (i) **Captive Alternatives LLC**; and (ii) employees, officers, directors, shareholders, partners, members, consultants, independent contractors, agents, attorneys or other representatives of any person described in clause (i) of this paragraph.

11. "You" or "your" refers to **Captive Alternatives** as defined in definition 10.

12. **"Risk Management Program"** means any service you provided or were engaged to provide; transactions and arrangements for which you filed Form 8918 Material Advisor Disclosure Statements; the programs or strategies described on your website, including but not limited to "Private Insurance," "CapAlt program," as well as any prior or similar programs/strategies. It also includes any arrangement involving Madison RE I.I., Madison National Insurance Company Ltd., or Madison International Insurance Company I.I.

13. "Client" means a person who directly or indirectly engaged you or a Vendor in connection with the **Risk Management Program**. Such persons include but are not limited to: Madison National Insurance Company Ltd.; Madison International Insurance Company I.I.; Madison RE I.I.; policyholders; insureds; protected cell companies, segregated asset plans, users of protected cells or segregated asset plans, captives, captive insurance company owners; shareholders of a captive insurance company; preferred share owners; tracking stock warrant holders; holders of Insurance Linked Securities, bonds, convertible promissory notes, or financial interests in a protected cell or segregated asset plan; investors.

14. "Vendor" means your affiliate or a third-party person providing products or services directly or indirectly in the **Risk Management Program**. Products and services

Attachment 2 - Page **2** of **3**

include, but are not limited to, insurance or reinsurance; or actuarial, claims administration, underwriting, legal, tax, accounting, consulting, management, and administrative services. Vendor includes, but is not limited to, Madison National Insurance Company Ltd., Madison International Insurance Company I.I., Madison RE I.I.. ████████████████████████████████████████████████████ .

████████████████████████████████████████

15. "Fronting insurance company" means a primary insurer of record that issues an insurance policy, but then cedes all or a part of the risk to another insurer. Fronting insurance company includes, but is not limited to, Madison National Insurance Company Ltd., and Madison International Insurance Company I.I.

16. "Reinsurer" means a person directly or indirectly accepting risks ceded by another person or a Fronting insurance company. Reinsurer includes but is not limited to: Madison RE I.I.; protected cell companies and individual protected cells; segregated asset plans; captive insurance companies; and any other person participating in a reinsurance, risk-sharing, or risk-pooling arrangement or agreement related to the **Risk Management Program.**

17. "Organize/organizing" is defined broadly within the common usage and includes, but is not limited to, making plans, arranging for, bringing into being, and establishing the **Risk Management Program** and/or participating and assisting in any such activity.

18. "Manager" is defined broadly within the common usage and includes, but is not limited to, having charge of, directing, conducting affairs of and carrying on business of the **Risk Management Program** and/or participating and assisting in any such activity.

19. "Promote/promoting" is defined broadly within the common usage and includes, but is not limited to, moving the **Risk Management Program** forward, to help bring about the **Risk Management Program**, or to further the **Risk Management Program** and/or participating and assisting in any such activity.

20. "Market/marketing" is defined broadly within the common usage, and includes, but is not limited to, educational services and presentations, offering for sale and/or participating and assisting in any such activity.

<div style="border:1px solid black; padding:10px;">

**SUMMONS ATTACHMENT 3**
**IN THE MATTER OF CAPTIVE ALTERNATIVES LLC**

**DOCUMENTS TO BE PRODUCED**

</div>

**A. For the period from January 1, 2011 through the date of full compliance with this Summons, please produce the following documents that are in your possession, custody, or control in connection with the Risk Management Program:**

1. All insurance policies, insurance binders, and Certificates of Insurance.

2. All documents related to the application for, purchase of, underwriting, and premium pricing for the insurance policies produced in response to Request No. 1 above, including, but not limited to: applications; risk assessment forms and questionnaires; evaluation of a Client or a prospective Client's suitability or eligibility; tax forms; estimated gross revenues; feasibility studies; loss runs; loss records; loss cost records, compilations, and analyses; underwriting and actuarial reviews, reports, and analyses; industry data; projections; computations; data compilations; graphical depictions of data; summaries of commercial insurance coverage; commercial insurance policies; policy, policy pricing, and policy limit deliberations; and confirmations of policy selection, premium total, bond total; correspondence; memoranda.

3. All reinsurance agreements, reinsurance binders, pooling agreements, quota share agreements, participation agreements, stop-loss protection agreements, layering agreements, and all other documents related to the ceding, sharing, or limiting of risks, including all actuarial and underwriting analyses.

4. All documents related to the onboarding of Clients, including any contract, agreement, or any modification thereto, and any financial or investment instrument or exercise of rights described in such contract or agreement. Such documents include and are not limited to the following:
   a. Documents related to the steps listed on your IDR No. 1 Response's "Onboarding Timeline" such as due diligence documents, biographical affidavits, driver licenses, personal financial statements, banking and investment accounts established
   b. Unified Preferred Share Subscription, Protected Captive Management Arrangements, and Quota Share Arrangements
   c. Articles of Organization for Captive, a Protected Captive within Madison RE I.I.
   d. Capitalization Agreements, Protected Captive Management Agreements, and 40/60 Quota Share Arrangements
   e. Unified Funds Withheld Risk Reserve Arrangements, Quota Share Arrangements, and Management Services Agreements
   f. Unified Insurance-Linked Investment Bond Purchases, Plan Right and Put Right Grant Agreements
   g. Engagement Agreements for Enterprise Risk Management Services
   h. Exchange, Termination, and Release Agreements
   i. Novation Agreements

j.  Risk Premium and Cessation Agreements
k.  Puerto Rico Forms CIS-003-001
l.  Insurance-linked Investment Bonds
m.  Share certificates
n.  Put Exercise Notices
o.  Management Services Agreements

5. All documents related to the billing and payment of insurance and reinsurance premiums, onboarding set-up fees, management fees, and any other fee or compensation related to the **Risk Management Program** and the items produced in response to Requests No. 1, 3 and 4 above, including, but not limited to, invoices, payment method, promissory notes, premium financing agreements, documents substantiating payments and dates of payments such as bank statements, canceled checks or images of canceled checks, or wire transfer notices, records of offsets or credits, correspondence, computations, notes, and memoranda.

6. All documents related to expelling or rejecting a Client or potential Client from your **Risk Management Program**.

7. All documents related to claims filed under the insurance policies produced in response to Request No. 1 above, including but not limited to:
    a.  Claims reporting, claims forms, supporting documentation, date of loss, description of claim, claim files
    b.  Amount of loss reserve, date of reserve, descriptions of claim reserves, descriptions of releases from reserves
    c.  Claims allowance, disallowance or partial disallowance adjudications, deliberations, manuals, procedures, notes, minutes, memoranda, computations, and analyses
    d.  Analyses of claimant's commercial policies, and primary and secondary insurance coverages
    e.  Payments to settle claims, documents substantiating payment and date of payment, reconciliations of any difference in amount of the claim and amount paid.

8. All documents related to the sharing of claim liabilities under the agreements produced in response to Request No.3 above. Such documents include, but are not limited to, correspondence, explanations, invoices, tables, and documentation of claims and amounts due, bank statements, documents substantiating payment and date of payment, records of offsets or credits, documentation or descriptions of claim reserves, documentation or descriptions of releases from reserves, memoranda, notes, computations, and analyses.

9. All documents pertaining to opinions or analyses related to the **Risk Management Program**, including but not limited to tax, legal, actuarial, or risk-transfer opinions or analyses.

10. All documents related to the multiple iterations of the **Risk Management Program** explained in your IDR No. 1 Response; including, but not limited to the following:
    a.  All advice and/or opinions related to the first iteration of the Insurance Company documents;

    b. The advice discussed on page 3 of your IDR No. 1 Response Exhibit D from legal counsel on or about November 1, 2017, leading to the second iteration of the Insurance Company documents;

    c. The advice discussed on page 4 of your IDR No. 1 Response Exhibit D leading to the third iteration of the Insurance Company documents; and

    d. All documents, including documents provided to Clients, regulatory agencies, taxing authorities, explaining or giving advice related to the various iterations.

11. All documents related to marketing, promoting, explaining or otherwise describing any aspect of the **Risk Management Program** to potential Clients, Clients, Vendors, or regulatory agencies including the structure, formation, implementation, operation, and termination of the **Risk Management Program**. Such information includes, but is not limited to, the following:

    a. Brochures, flyers, published articles, presentation or seminar materials or handouts, video audio presentations, schedules for presentations or seminars offered for the **Risk Management Program**

    b. PowerPoint presentations

    c. Program manuals, operations handbooks

    d. Financial projections, tax benefit calculators

    e. Tax, legal, actuarial, or any other opinions or analyses

    f. Business Plans

12. All documents that make or furnish a statement with respect to the allowability of any deduction, the excludability of any income, or other tax benefit.

13. All documents involving Client referrals, including, but not limited to:

    a. Correspondence, contracts, agreements, or engagement letters with referrer/referral sources;

    b. Discussion of potential Clients and Clients, including profiles and suitability for the **Risk Management Program**;

    c. Records related to payment of referral fees.

14. All engagement letters, contracts, agreements, and modifications thereto not otherwise provided; such as agreements with premium lenders, Vendors, Fronting insurance companies, or Reinsurers.

15. All documents related to the formation or liquidation of any foreign or domestic Person that was formed or liquidated with your advice, involvement, or knowledge; including but not limited to, all documents provided to or received from a regulatory agency, governing jurisdiction, or government authority. Such foreign or domestic Persons include, but are not limited to, entities related to Clients, Fronting insurance companies, Reinsurers, protected cell insurance companies, segregated asset plans, and protected cells. Such documents include and are not limited to the following types of documents:

    a. Application, due diligence, formation, organizational, annual reports, operations, and dissolution documents;

    b. Insurance licenses, Certificates of Authority, and Tax Exemption Grants; and

    c.  For any Commonwealth of Puerto Rico Protected Cell Insurance Company, including the protected cells, produce all documents and information provided to the Commonwealth of Puerto Rico Office of the Commissioner of Insurance, including all the required CIS submission forms and supplemental filings (for example Forms CIS-001, CIS-003, CIS-005, etc.), as well as the supporting documentation.

16. Organizational minutes, as well as Board of Director resolutions and minutes, of such foreign or domestic Persons described in Request No. 15 above.

17. All foreign or domestic tax elections, tax returns, and information returns that you prepared, agreed to prepare, or caused to be prepared under your agreements.

18. All databases, program spreadsheets, and any other information that detail or track Clients, income, fees, premiums, policies, pooling, rating factors, underwriting and claims information on a periodic basis.

19. All statements and documents related to any banking or investment relationship or account of, or for the benefit of, a Client, or a Person described in Request No. 15 above.

20. Books, records, reporting, or accounting related to a Client, or a Person described in Request No. 15 above; including but not limited to the following:
    a.  Premiums, expenses, funds receipt, funds distributions
    b.  Financial statements, exhibits, and schedules
    c.  Accounting and valuation reports made quarterly, annually, or any other agreed-upon periodic basis
    d.  Claim reports, retrocession statements, and reports of pro-rata participation
    e.  Tracking stock valuation reports
    f.  Stock ledgers, including preferred share stock ledgers
    g.  Funds Withheld Risk Reserve ("FWRR") Transfer Statements
    h.  Sources and Uses of Plan Assets Statement
    i.  Plan Fair Market Value periodic reports

21. Produce all correspondence and emails (including attachments) related to the **Risk Management Program.**

22. Produce all notes, memoranda or other documents reflecting or related to oral communications regarding the **Risk Management Program**.

**B. For the period from January 1, 2011 through the date of full compliance with this Summons, unless otherwise stated, please produce the following documents that are in your possession, custody, or control in connection with Captive Alternatives LLC:**

1. **Captive Alternatives LLC**'s formation documents, Limited Liability Company ("LLC") Articles of Organization and Operating Agreement(s), exhibits and attachments, and all amendments thereto, beginning from the date of formation.

2. **Captive Alternative LLC**'s audited, certified, reviewed, unaudited, and/or compiled financial statements, including applicable exhibits or footnotes.

3. **Captive Alternative LLC**'s accounting books and records. Such records include, but are not limited to, trial balances, detailed general ledgers, and subsidiary ledgers. Provide all other workpapers and documents necessary to reconcile the books to the tax return(s) such as:
   a. Chart of accounts and groupings
   b. Adjusting and closing entries
   c. Year-end working trial balance
   d. Year-end tax return workpapers and reconciliation schedules including all Schedule M adjustments (including all work papers for these adjustments).
   e. Sales journals detailing all income sources and amounts.
   f. Regarding the detailed general ledgers, ensure the following information is provided for each entry:
      i. Date
      ii. Journal entry description
      iii. Split account
      iv. Journal entry comments (to assist in the explanation of the purpose of the journal entry)
      v. Beginning and ending tax period account balance (for the GL grouped by general ledger account number)
   g. Where applicable, provide in MS Excel.

4. All statements, canceled checks or images of canceled checks, wire transfer statements, and documents related to **Captive Alternative LLC**'s banking or investment accounts.

5. All documents identifying or describing all document retention policies, including documents regarding electronically stored information ("ESI") back-up policies and procedures.

6. All documents that identify the locations of ESI, including identifying server names, server file path information, machine names, back up location. Include any third-party ESI Vendor information, for example, Microsoft OneDrive, Google drive, DocuSign.

7. All documents regarding current or archived websites, webpages, information portals, reading rooms, or document repository, organized or managed by you or Vendor.

SUMMONS ATTACHMENT 4
IN THE MATTER OF CAPTIVE
ALTERNATIVES LLC



## Internal Revenue Service Office of Chief Counsel
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents (September 2020)

### Table of Contents

Modifications ................................................................................................................... 1

General Instructions ......................................................................................................... 2

Delivery Formats .............................................................................................................. 3

   I.   Imaged Productions ............................................................................................ 3

      1.  Image Files ..................................................................................................... 3

      2.  Image Load Files ........................................................................................... 4

      3.  Metadata Load Files ...................................................................................... 4

      4.  Extracted and OCR Text Files ...................................................................... 4

      5.  Linked Native Files ........................................................................................ 5

   II.   Native File Productions without Load Files (Prior Approval Required) ........................ 5

   III.  Adobe PDF File Productions (Prior Approval Required) ........................................ 5

   IV.  Audio and Video Files ....................................................................................... 5

   V.   Mobile Device and Social Media Data .............................................................. 5

### Modifications

Any modifications or deviations from these Production Specifications may only occur upon agreement between the parties. Any proposed production that

   (1) is in a format other than those identified below,
   (2) proposes use of predictive coding,
   (3) includes email threading and/or
   (4) uses de-duplication during the processing of documents,

must be discussed with and approved by the legal and technical staff of the IRS. The methodology must be disclosed in the cover letter. In addition if the production will be de-duplicated, it is vital that you (1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, (2) make that unique metadata part of your production to the IRS.

Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and arrangements should be made with the IRS to facilitate their production.

Production Specifications for
**Electronically Stored Information [ESI] and Hard Copy Documents (Aug 2020)**

---

**General Instructions**

This document describes the technical requirements for electronic document productions to the Internal Revenue Service, Office of Chief Counsel (IRS).

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is **not** considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the IRS will explore other format options with the producing party.

General requirements for ALL document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting IRS staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one metadata load file and only one image load file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. All load-ready collections must be produced with a "read me" text file that identifies the Bates range, the field name to which images will be linked, a list of all fields produced and enumerate the quantity of each of the following attributes:
   a. Documents
   b. Pages
   c. Native Files
   d. Redacted Documents
10. Audio files should be separated from data files if both are included in the production.
11. All electronic productions submitted on media must be produced using WINZIP or PKZIP compressed archive.
12. Electronic productions **cannot** be submitted via Secure File Transfer. The IRS also **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
13. Any data or files that are encrypted or password protected should be decrypted and/or passwords removed prior to production. If a password cannot be removed, the password must be provided.

Production Specifications for
Electronically Stored Information [ESI] and Hard Copy Documents (Aug 2020)

14. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
15. All electronic productions should be produced free of computer viruses.
16. Before producing forensically collected images of computer hard drives, parties should reach out to the requesting IRS staff member in order to discuss appropriate handling.
17. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach the requesting IRS staff member in order to discuss an appropriate production format.
18. All metadata associated with native documents, emails, and media files must be maintained. See **Addendum A** for a list of basic metadata fields requested for production. This list is not exhaustive and requested fields may differ depending on specifics of a particular matter. If producing fields outside of this list, provide a definition grid detailing the function of the field.

**Delivery Formats**

I.   **Imaged Productions**
     All scanned paper and electronic file collections shall be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document level extracted text files.

1.   **Image Files**
     a. Black and white images must be produced as Group IV 300 DPI single-page tagged image file (.TIF) format images
     b. Charts, pictures and graphs must be produced in color .JPG or .JPEG format
     c. File and folder names must only be comprised of alphanumeric, dash (-) or underscore (_) characters. All other special characters are not permitted in file or folder names, including but not limited to [space]<>/:*?|\ and "
     d. File names cannot use a dot (.) as the last character
     e. The number of image files per folder should not exceed 15,000 files
     f. All image files must have a unique file name, i.e. Bates number
     g. Images must be endorsed with sequential Bates numbers in the lower right corner of each image and shall not be smaller than font size 10.
     h. Bates numbers are to be applied such that no text or information is obscured by the Bates number
     i. Any confidential stamps or court ordered messages should be stamped on the lower left corner but shall not impede the Bates number.
     j. AUTOCAD/photograph files should be produced as a single page JPEG file
     k. All hidden text such as track changes, hidden columns, etc., shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image files.
     l. Documents that become unwieldy during processing (spreadsheets, Quickbooks and other databases, large diagrams etc.) and documents incapable of being converted to TIF image format (video, audio, applications, etc.) shall be produced in native format with a corresponding single-page place holder bearing the Bates number of the document being produced
     m. Microsoft Access Databases or other Structured Data shall be produced in native MS Access 2010 or earlier format (.mdb) with a corresponding single-page "PLACEHOLDER" TIFF image, accompanied by a text load .DAT file containing Bates numbers, applicable metadata, and native and extracted text link. Please consult with the IRS legal and tech department prior to submitting other database format.
     n. Digital Photographs shall be submitted as single-page JPEG files with a resolution equivalent to the original image as it was captured/created. All associated metadata and text fields shall be produced as well. All digital videos shall be submitted as native files with associated

metadata and an accompanying single page "PLACEHOLDER" TIFF image.

2. **Image Load Files**
   The image load file (.OPT) shall be a comma delimited, page-level load file consisting of seven fields per line, with each line representing one image in the following format:

   ImageID,VolumeLabel,ImageFilePath,DocumentBreak,BoxBreak,PageCount

   Ex.:

   SMPL_00001,SMPL_001,D:\IMAGES\001\SMPL_00001.TIF,Y,,,3
   SMPL_00002,SMPL_001,D:\IMAGES\001\SMPL_00002.TIF,,,,
   SMPL_00003,SMPL_001,D:\IMAGES\001\SMPL_00003.TIF,,,,
   SMPL_00004,SMPL_001,D:\IMAGES\001\SMPL_00004.TIF,Y,,,2
   SMPL_00005,SMPL_001,D:\IMAGES\001\SMPL_00005.TIF,,,,

3. **Metadata Load Files**
   The metadata load-file (.DAT) contains all the fielded information that will be loaded into the database.

   a. The first line of the .DAT file must be a header row identifying the field names
   b. The .DAT file must use the following *Concordance*® default delimiters:

   | | | |
   |---|---|---|
   | Comma | ¶ | (ASCII character 020) |
   | Quote | þ | (ASCII character 254) |
   | Newline | ® | (ASCII character 174) |
   | Multi-Value | ; | (ASCII character 059) |
   | Nested Value | \ | (ASCII character 092) |

   c. If the .DAT file is produced in Unicode, it must contain the byte order marker.
   d. Date fields should be provided in MM/DD/YYYY format
   e. Dates and their corresponding time values must be bifurcated into two discrete fields
   f. Time zone must be indicated in a dedicated field
   g. Imaged emails and attachments must include attachment fields to preserve the parent/child relationship between an email and its attachments
   h. An OCRPATH field must be included to provide the file path and name of the text file on the produced storage media. Do not include extracted or OCR text in the .DAT field.
   i. BEGATTACH and ENDATTACH fields must be two separate fields
   j. A complete list of metadata fields is available in **Addendum A** to this document

4. **Extracted and OCR Text Files**
   a. Text must be produced as separate document-level text files, not as fields within the .DAT file.
   b. Text files must be named identical to their corresponding BEGDOC image files and the full path to the text file (OCRPATH) should be included in the .DAT file
   c. Text files must be in a separate folder from the images or native files and should not exceed 15,000 files per folder
   d. For redacted documents, provide the full text for the redacted version
   e. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production
   f. Where extracted text is not available, such as hard copy scanned files or image only files, OCR text shall be provided as plain ASCII text files.

4

**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents (Aug 2020)**

5. **Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

    a. Native file documents must be named identical to their corresponding BEGDOC image files and the full path to the native file (NATIVELINK) should be included in the .DAT file

    b. Native files must be in a separate folder from the images or text files and should not exceed 15,000 files per folder

II. **Native File Productions without Load Files (Prior Approval Required)**

With prior approval (emphasis added), native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

III. **Adobe PDF File Production (Prior Approval Required)**

With prior approval (emphasis added), Adobe PDF files may be produced in native file format.

    a. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.

    b. PDF files should be produced in separate folders named by the custodian

    c. File and folder names must only be comprised of alphanumeric, dash (-) or underscore (_) characters. All other special characters are not permitted in file or folder names, including but not limited to [space]<>/:*?|\ and "

    d. File names cannot use a dot (.) as the last character

    e. The number of PDF files per folder should not exceed 1,000 files

    f. All PDF files must contain embedded text that includes all discernable words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.

    g. If PDF files are bates endorsed, the PDF files must be named by the BEGDOC value

IV. **Audio and Video Files**

Audio and videos must be produced in a format that is playable using Microsoft Windows Media Player™. Also include MPEG-1 version.

V. **Mobile Device and Social Media Data**

Before producing social media or mobile device data (including but not limited to text messages), parties should reach out to the requesting IRS staff member to discuss the appropriate production format.

**Addendum A**

During the process of converting ESI from the electronic format of that application in which the ESI is normally created, viewed, and/or modified to TIFF, existing metadata values should be extracted and produced in a metadata load file. When producing metadata of electronic document collections, it should be extracted and provided in a .DAT file using the field definition and formatting described below:

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | Sample Data | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|---|
| DOCID | Must equal the value appearing in the BEGDOC# field and be UNIQUE. | Note Text | SMPL_000001 | x |  | x | x |
| BEGDOC | Starting Bates number (including prefix) – No spaces | Note Text | SMPL_000001 | x | x | x | x |
| ENDDOC | Ending Bates number (including prefix) – No spaces | Note Text | SMPL_000001 | x | x | x | x |
| BEGATTACH | Starting Bates number of Parent in a family group (only populate this field if the document is part of a family) | Note Text | SMPL_000001 |  | x | x | x |
| ENDATTACH | Ending Bates number of last Attachment (only populate this field if the document is part of a family) | Note Text | SMPL_000015 |  | x | x | x |
| PARENTID | Starting Bates number of Attachment's parent (only populate this field if the document is part of a family) | Note Text | SMPL_000001 |  | x | x | x |
| ATTRANGE | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document | Note Text | SMPL_000001 - SMPL_000015 |  | x | x | x |
| ATTACHMT | Child document list: BEGDOC# of each child (populated ONLY in parent records). | Multi-Entry (semi-colon delimited) | SMPL_000002; SMPL_000014 |  | x | x | x |
| VOLUME | Production Volume Number | Note Text | VOL001 | x | x | x | x |
| REQNUM | Subpoena/request paragraph number to which the document is responsive | Multi-Entry (semi-colon delimited) | 1.5;5.2;6.3 | x | x | x | x |
| ORGANIZATION | Organization where data was collected from | Note Text | ABC, Inc |  | x | x | x |
| CUSTODIAN | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated | Note Text | Smith, John |  | x | x | x |
| ALLCUSTODIANS | Same as above for all custodians of that document | Note Text | Johnson, Robert; Thompson, Fred; James, Ellen |  | x | x | x |
| FILEPATH | File path to native file as it existed in original environment, prepended with Custodian Name | Note Text | Smith, James-C\My Documents\Sales Info\ACME |  | x | x | x |
| FILENAME | File name of native file (Edocs or attachments to Email). | Note Text | BoardMeetingMinutes.docx |  | x | x | x |

9

Addendum A

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | Sample Data | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|---|
| FILE EXTENSION | The file type extension representing the email or native file document; will vary depending on the format | Max Five Characters | MSG | | x | x | x |
| APPLICATION | Application used to create native file | Note Text | e.g., Excel, Outlook, Word | | x | x | x |
| AUTHOR | Author field value extracted from the metadata of a native file. | Note Text | Smith, John | | | x | |
| LAST_AUTHOR | Last Saved By field value extracted from metadata of a native file. | Note Text | Smith, John | | | x | |
| DATECREATED | Date electronic file was created. Format: MM/DD/YYYY. | Date (MM/DD/YYYY) | 10/02/2010 | | | x | |
| TIMECREATED | Time electronic file was created. Format: HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm; time zone indicators cannot be included). | Time | 13:32:00 | | | x | |
| DATE_HC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. | Date (MM/DD/YYYY) | 10/02/2010 | x | | | |
| DATELASTMOD | Native: Date the document was last modified | Date (MM/DD/YYYY) | 10/02/2010 | | | x | |
| TIMELASTMOD | Native: Time the document was last modified | Time | 13:32:00 | | | x | |
| COMMENTS | Comments from the body of the file | Note Text | | | x | x | x |
| HIDDENTEXT | True if document contains hidden text, otherwise False | Note Text | TRUE | | x | x | x |
| TO | Recipients of the Email or Calendar Item (as formatted on the original). | Multi-Entry (semi-colon delimited) | Frank Thompson [mailto: frank_Thompson@cdt.com] | | x | | x |
| FROM | Author of the Email or Calendar item (as formatted on the original). | Note Text | Dan Smith [mailto: dan_smith@cdt.com] | | x | | x |
| CC | Copies of the Email or Calendar Item (as formatted on the original). | Multi-Entry (semi-colon delimited) | Ellen James [mailto: ellen_james@cdt.com] | | x | | x |
| BCC | Blind Copies of the Email or Calendar Item (as formatted on the original). | Multi-Entry (semi-colon delimited) | Robert Johnson [mailto: robert_johnson@cdt.com] | | x | | x |

7

Addendum A

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | Sample Data | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|---|
| EMAILSUBJECT | Email or calendar item subject. | Note Text | RE: Board Meeting Minutes | | x | x | x |
| TIMEZONE | The Time Zone in which the custodian is normally located. | Note Text | GMT | | x | x | x |
| DATESENT | Date the Email or Calendar Item was sent. Format: MM/DD/YYYY | Date (MM/DD/YYYY) | 10/02/2010 | | x | | x |
| TIMESENT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. | Time | 13:32:00 | | x | | x |
| DATERCVD | Date Email or Calendar Item was received. Format: MM/DD/YYYY. | Date (MM/DD/YYYY) | 10/02/2010 | | x | | x |
| TIMERECEIVED | Email: Time the email was received/ Time zone in which the emails were standardized during conversion. | Time | 13:32:00 | | x | | x |
| MAILSTORE | Name of the email file | Note Text | custodian name.pst | | x | | x |
| HEADERS | The internet header information from each Email. | Note Text | ------ | | x | | x |
| MSGCLASS | Exchange Message class or equivalent | Note Text | IPM.note | | x | | x |
| CONVINDEX | Conversation Index (Email system ID used to track replies, forwards, etc.) | Note Text | <000805c2c71b575977 0505cb 8306d1@MSN> | | x | | x |
| INTERNETMSGID | Globally unique identifier for a message which typically includes messageid and a domain name. | Note Text | Example: <0E6648D558F3381795 24D555@m1p.innovy.net | | x | | x |
| MESSAGEID | Unique system identification number for the email message assigned by the proprietary email database/mailstore/post office file associated with centrally managed enterprise email servers. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mailstore formats. | Note Text | Message-ID: <4129F3CA.2020509@dc.edu> | | x | | x |
| RECORD TYPE | Indicate all that apply. Record Type: Edoc, Edoc Attachment, Email, Email Attachment, Hard Copy, Calendar Appt Other Notations: Translation, Translated Privilege Notations: Redacted, Privileged, Family Member of Priv Doc | Note Text | Email | x | x | x | x |

Addendum A

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | Sample Data | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|---|
| FILE SIZE | File size in Bytes (integer value only – do not include unit of measure, thousands character, or decimal places - e.g., 1008 not 1,008). | Integer | 1008 | × | × | × | × |
| MD5 HASH | Document MD5 hash value (used for deduplication or other processing). | Note Text | d131dd02c5e6eec4693 d9a069 8aff95c 2fcab5871 2467eab400 4583eb 8fb7f89 | × | × | × | × |
| PGCOUNT | Number of pages in a document | Integer | 1 | × | × | × | × |
| NATIVELINK | Hyperlink to the email or native file document. **The linked file must be named per the BEGDOC number | Note Text | D:\001\ SMPL_000001.msg | | × | × | × |
| OCRPATH | Path to extracted text of the native file | Note Text | TEXT/001/SMPL_00000 1.txt | × | × | × | × |

9