IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case no. 8:22-cv-406 |
| | ) |
| CAPTIVE ALTERNATIVES, LLC, | ) |
| | ) |
| Respondent. | ) |

**RESPONSE TO MOTION TO CONTINUE SHOW CAUSE HEARING**

The United States opposes the Respondent's motion to continue the May 24, 2022 show cause hearing. The Respondent's request will unnecessarily delay the Internal Revenue Service's investigation into whether the Respondent may be liable for civil penalties related to its organization, promotion, and sale of a purported insurance plan or arrangement. That investigation has already been hindered enough by Respondent's inaction. There is no good-faith basis for the Respondent's request for a continuance. Thus, its motion should be denied and the Court should maintain the briefing schedule set forth in its March 16, 2022 order (ECF No. 4) and hold the show-cause hearing on May 24, 2022.

**I. Background**

Approximately 18 months ago, on October 27, 2020, the IRS informed the Respondent by letter that the IRS was investigating whether the Respondent is liable for penalties under 26 U.S.C. § 6700. Section 6700 of the Internal Revenue Code

1

impose penalties for, among other things, promoting abusive tax shelters. A penalty may be assessed for each separate tax return, or transaction, or for separate activities, related to each entity or arrangement involved. *See, e.g.*, 26 U.S.C. § 6700(a)(2) ("activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity").

The IRS enclosed with its letter a draft request for the production of documents and requested that the Respondent contact the IRS to discuss the draft document request. The Respondent contacted the IRS and agreed to provide a response by December 21, 2020. The IRS then issued the document request to the Respondent in final form without any substantive changes. On December 20, 2020, the Respondent requested an extension to comply until December 23, 2020. The IRS granted the request. On December 23, 2020, the Respondent requested until December 28, 2020 to comply. On December 28, 2020, the Respondent requested until January 11, 2021 to comply. The IRS again granted the request. Thereafter, the Respondent produced some, but not all, of the requested documents.

On April 19, 2021, the IRS sent a draft of a second request for documents to the Respondent for discussion. This request covered documents that the Respondent failed to provide in response to the IRS's first request and other additional documents. On May 20, 2021, the IRS and the Respondent discussed the draft request, and the Respondent agreed to provide a response by August 20, 2021. The IRS then issued its second request for documents in final form without any

substantive changes. On July 20, 2021, the Respondent objected to a portion of the second document request.

On October 14, 2021, the IRS issued the summons at issue in this case. The documents requested in the summons mirror the documents that the IRS requested in May 2021. The summons requested the production of records for the time period from January 1, 2011 until the date of full compliance with the summons. The Respondent failed to produce any documents in response to the summons. In a letter dated November 2, 2021, the Respondent provided the IRS with its objections to the summons.

The United States filed this enforcement action on February 18, 2022. On March 16, 2022, the Court set a show cause hearing for May 26, 2022 and a briefing schedule, requiring the Respondent to respond to the petition on or before May 12, 2022, and the United States to file any responsive brief on or before May 20, 2022. The Court subsequently moved the show cause hearing to May 24, 2022. On or about April 5, 2022, the Respondent, for the first time, produced documents responsive to the summons. Specifically, the Respondent produced 170 documents to the United States that are responsive to a handful of the requests in the summons. These are the only records that the Respondent has produced in response to the summons, which was issued over six months ago and covers documents requested more than a year ago.

By letter dated April 13, 2022, counsel for the Respondent requested the

United States' views on a six-month continuance of the show cause hearing. By letter dated April 18, 2022, counsel for the United States notified counsel for the Respondent that it would not agree to a six-month continuance, but that it would agree to a two-month continuance if the Respondent provided certain documents by July 1, 2022. The Respondent refused. On May 3, 2022, more than two weeks after the United States' letter, and on the heels of its deadline to the respond to the petition, the Respondent asked this Court for emergency relief from the briefing schedule and another half-year to prepare for the show cause hearing.

## II.  Argument

The Court should deny the Respondent's motion for a six-month continuance of the show cause hearing for two reasons. First, summons enforcement proceedings should proceed quickly so as to not delay the IRS's investigation, and the Respondent is merely attempting (as it has done in the past) to needlessly delay the investigation. Second, the voluntary productions that the Respondent promises to make would not obviate the need for a court order enforcing the summons, nor narrow the issues before the Court.

### A. A half-year continuance of the show cause hearing would needlessly delay the IRS's investigation.

Section 7602 of the Internal Revenue Code (26 U.S.C.) authorizes the IRS to issue a summons to "examine any books, paper, records or other data" that may be relevant to determine or collect any tax, penalties, or interest. *See, e.g., United States v. Euge*, 444 U.S. 707, 710-11 (1980); *United States v. LaSalle Nat'l Bank*, 437 U.S. 298,

308 (1978). A summons is not self-enforcing. If a party refuses to comply with a summons, 26 U.S.C. §§ 7402(b) and 7604(a) provide for an enforcement proceeding in district court. *See, e.g.*, *United States v. Powell*, 379 U.S. 48, 52 (1964). Thus, obtaining a court order, backed by the Court's contempt powers, is a necessary enforcement procedure where a party refuses to comply (whether in whole or part) with an IRS summons.

Importantly, summons enforcement proceedings are summary in nature, and "'should be concluded quickly, so that the investigation may advance toward the ultimate determination of civil or criminal liability, if any.'" *In re E.E.O.C.*, 709 F.2d 392, 399 (5th Cir. 1983) (quoting *United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981)); *see also LaSalle Nat. Bank*, 437 U.S. at 316; *United States v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15, 18 (D.D.C. 2003); *United States v. No Name Video, Ltd.*, 978 F.2d 1257, 1992 WL 295171, at *4 (4th Cir. 1992) ("Such a practice is consistent with the goal of concluding summons enforcement proceedings quickly, so that the IRS's investigation will not be delayed.").

Here, the IRS has been attempting to obtain records that may be relevant to its investigation from the Respondent for nearly 17 months without success. After two failed attempts to obtain records, the IRS issued a summons to the Respondent on October 14, 2021 requesting the production of records on or before November 2, 2021. The Respondent again refused to produce the records. Now, the Respondent needlessly seeks to further delay this investigation by <u>at least</u> an additional six

months. In practice, the delay will be much longer, because that is merely the period that the hearing would be continued; the Court will still require additional time to consider the pleadings and enter an order (or a report and recommendation, followed by possible objections), and the Respondent will then require time to produce any responsive records it may be ordered to produce.[1]

There is no good-faith basis to continue the hearing. Merely producing 170 documents—only after the Court scheduled the show-cause hearing—does not demonstrate that the Respondent will now comply with the summons without a court order.[2] To the contrary, in November 2021, the Respondent submitted to the IRS its objections to the summons, and it has not withdrawn those objections. Since then, there has been no indication that the Respondent intends to fully comply with the summons. If that were the case, the Respondent could simply file a response to the petition stating that it has no objection to enforcement of the summons. The

---

[1] The United States, of course, does not seek the production of all responsive records at the hearing on May 24. The United States asks the Court to enter an order enforcing the summons and setting a deadline for the Respondent to produce responsive records. This procedure inherently further delays the IRS's investigation. The matter has been referred to a Magistrate Judge, who will likely issue a report and recommendation. The parties then have 14 days to file any objections, and another 14 days to file any responses to objections. As a result, it may be late summer or early fall (or later) before a final enforceable order is entered. The timeframe for the production of responsive records will necessarily follow that.

[2] The Respondent has had since at least October 2021 to begin producing records responsive to the summons, many of which were also identified in prior document requests that the IRS issued. The upcoming hearing has spurred the Respondent to take some action. For this additional reason, the Court should not continue the show cause hearing.

Court could then enter an order enforcing the summons. But the Respondent has not indicated—at any time—that it does not object to the summons.

### B. The voluntary productions that the Respondent promises to make will not narrow the issues before the Court.

The Respondent claims that it is in the process of producing documents in response to "the majority of Summons categories." (ECF No. 17 at 7.) But it fails to demonstrate how productions of anything less than all documents responsive to the summons justify a half-year continuance of the show cause hearing. The Respondent readily admits that the parties take vastly different positions on whether certain categories of documents requested in the summons are enforceable. And the Respondent acknowledges that any voluntary productions it makes will not avoid the need for litigation. (*See* ECF No. 17 at 3.) Instead, the Respondent argues that its voluntary productions will substantially narrow the issues before the Court and preserve the Court's resources. The Respondent is wrong for two reasons.

First, whether the Court holds the show cause hearing now or six months from now, it will need to decide if the IRS's summons is enforceable in seeking documents covering the time period indicated in the summons: January 1, 2011 to the date of full compliance with the summons. The Respondent makes much of the fact that it has produced or will produce some (but not all) records for the time periods 2011, 2012, part of 2013, and 2015-2020. But the Respondent has refused to produce documents for part of 2013, 2014, 2021, and 2022. Whether the summons is enforceable with respect to those time periods will not change six months from now.

With respect to the time periods that the parties agree upon, no action will be required by the Court beyond including the parties' agreement with respect to those productions in its order and ordering a production timeline.

Second, whether the Court holds the show cause hearing now or six months from now, it will need to decide whether the document requests that the Respondent objects to should be enforced. Tellingly, the Respondent does not argue that it needs time to craft its objections in this regard. The Respondent has known since November 2021, when it submitted its objections to the summons to the IRS, which document requests it challenges. Perhaps just as important, in its motion to continue, the Respondent only agrees to produce self-selected documents responsive to selective document requests for a selective time period. But its self-selected productions will not obviate the need for the Court to decide which document requests are enforceable because we seek *all* of the documents requested in the summonses, not just what the Respondent is unilaterally willing to produce at a time of its choosing. The Respondent's proposal is just not the way summons enforcement proceedings work. And, again, for the document requests that the Respondent does not object to, no action will be required by the Court to enforce those productions beyond ordering a date for production. In short, the Respondent must bring its objections to the Court's attention. There is no reason why those objections cannot, or should not, be raised by May 24, 2022, rather than six months later while the Respondent produces what it wants, when it wants and delays this investigation

further.

Finally, the Respondent's contention that third-party productions from separate summons enforcement lawsuits could obviate the need to enforce the summons here is wholly unsupported by caselaw. The Respondent's position is that the Court should wait and see whether others produce documents to the IRS and then order the Respondent to produce any records that are missing. That is, again, not how summons enforcement works. The IRS is entitled to obtain documents from multiple sources to compare records for accuracy, to determine whether a production is complete, and to review original or primary documents. *See United States v. Luther*, 481 F.2d 429, 432 (9th Cir. 1973); *Sugarloaf Funding, LLC v. U.S. Dept. of Treasury*, 584 F.3d 340, 350 (1st Cir. 2009). Moreover, as the Respondent is aware, the IRS has not obtained any documents from the third parties they reference. For example, while the IRS issued a summons to Pinnacle Actuarial Resources, Inc. seeking documents as part of its investigation into the potential liabilities of Captive Alternatives, LLC, Pinnacle did not produce any responsive documents. Rather, the United States was forced to file a summons enforcement action. The show-cause hearing in that case is set for June 9, 2022, and it may be several months before Pinnacle produces any responsive records. Waiting to see what happens in other summons enforcement lawsuits flies in the face of the well-established "goal of concluding summons enforcement proceedings quickly, so that the IRS's investigation will not be delayed." *No Name Video, Ltd.*, 1992 WL 295171, at *4.

### III. Conclusion

The Respondent has had more than six months to make productions responsive to the summons. It only started making productions of documents after the Court issued an order scheduling the show cause hearing. Its conveniently timed promise to start making self-selected document productions will not narrow the issues for the Court's consideration in any meaningful way. The Court should decline the Respondent's invitation to further delay the inevitable.

Dated: May 6, 2022            Respectfully submitted,

ROGER B. HANDBERG
United States Attorney
DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Lauren A. Darwit
DANIEL A. APPLEGATE
LAUREN A. DARWIT
U.S. Department of Justice, Tax Division
P. O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-8180 (DAA)
Fax: (202) 514-6770
daniel.a.applegate@usdoj.gov
lauren.a.darwit@usdoj.gov

*Attorneys for Petitioner*
*United States of America*

## CERTIFICATE OF SERVICE

 IT IS HEREBY CERTIFIED that service of the foregoing document has been made through the Court's CM/ECF system on May 6, 2022.

           /s/ Lauren A. Darwit
           LAUREN A. DARWIT
           Trial Attorney, Tax Division