**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

    Petitioner,

                                        Case No. 8:22-cv-00406-TPB-CPT

v.

CAPTIVE ALTERNATIVES, LLC,

    Respondent.

_____/

**RESPONDENT CAPTIVE ALTERNATIVES, LLC'S**
**MOTION FOR NON-WAIVER AND CLAWBACK ORDER**

Respondent Captive Alternatives, LLC ("Captive Alternatives" or "the Company"), by and through its undersigned counsel, moves the Court to enter an order, pursuant to Federal Rule of Evidence 502(d), providing for the non-waiver and ability to claw back privileged materials produced in response to the Internal Revenue Service ("IRS" or "Service") Summons.

In support of this motion, Captive Alternatives states as follows:

**I.  Introduction**

After years of discovery disputes with the IRS, Captive Alternatives accepts the Court's determination that it must produce in response to the Summons all documents sought by the Service which total over 1.1 million, consisting primarily

of emails and other electronically stored information.[1] Captive Alternatives now moves the Court for the entry of an order pursuant to Federal Rule of Evidence 502(d) to facilitate the Company efficiently complying with its document production obligations.

As part of agreeing to jointly petition the Court to resolve the Report and Recommendation ("R&R," ECF No. 71) without objection, Captive Alternatives and the Service (collectively, "the Parties") stipulated that they would "negotiate, in good faith, proposed language for an order pursuant to Federal Rule of Evidence 502." (ECF No. 76, at 2.) And the Court entered an order requiring the Parties to do the same. (ECF No. 77, ¶ 4(c).) Notwithstanding the Court's mandate and its own representation, the Service has refused to substantively negotiate with Captive Alternatives about the terms of a proposed order. In fact, the Service opposes such an order.

Captive Alternatives had hoped to jointly petition the Court and preclude the need for judicial resolution of another contested issue. A Rule 502(d) order is in the interest of both Parties—Captive Alternatives is saved some of the burden and cost of pre-production review and the Service obtains access to documents more expediently. However, given the Service's position and the significant

---

[1] Captive Alternatives is not required to re-produce any documents that it produced, or caused to be produced, to the Service following the issuance of the Summons.

burden to the Company—namely, the costs associated with reviewing and producing such a significant volume of documents and the near inevitability of making mistakes in doing so—Captive Alternatives requests the Court enter an order pursuant to Fed. R. Evid. 502(d) over the Service's opposition.

## II.     Background[2]

In February 2022, the United States filed a Petition to Enforce an IRS Summons (ECF No. 1) against Captive Alternatives. The Summons at issue (ECF No. 1-2) seeks the production of twenty-nine categories of materials, not including subparts, for the period of January 1, 2011 through full compliance with the Summons. Taken together with the expansive definitions in the Summons, these categories call for the production of "practically every document in the Company's possession" during the relevant timeframe. (ECF No. 50-1, ¶ 14.)

After extensive litigation and briefing by the Parties, Magistrate Judge Tuite issued the R&R, which recommended that Captive Alternatives be required to fully comply with the Summons, except that the Company would not be required to re-produce any documents that it produced, or caused to be produced, following the issuance of the Summons. R&R at 28. Following the issuance of the

---

[2] Because the Court is aware of the extensive history between the parties stretching back to 2013, *see* R&R at 2–8, Captive Alternatives will focus on those facts that are relevant to why a Rule 502(d) order is appropriate here.

R&R and before the time for filing objections to the R&R expired, the Parties engaged in negotiations to resolve the matter without the need for filing objections.

On March 3, 2023, in lieu of filing objections to the R&R, the Parties jointly petitioned the Court to adopt the R&R subject to three modifications. *First*, the Parties agreed that Captive Alternatives would make rolling productions of responsive documents and complete its response to the Summons by October 1, 2023. *Second*, the Parties agreed to establish February 28, 2023, as the stop date for the Company's production obligations with a minor exception that is not relevant here. And *third*, the Parties agreed to:

> discuss[] whether an order, pursuant to Federal Rule of Evidence 502, may be appropriate. Therefore, the parties will negotiate, in good faith, proposed language for such an order and, if successful, jointly petition the court for the entry of such an order. If the parties are unsuccessful and fail to reach an agreement on proposed language for such an order, the parties agree that Captive Alternatives will retain its ability to petition the court in its own right for the entry of such an order. The United States agrees that Captive Alternatives may file a petition seeking such an order.

(ECF No. 76.) On March 8, 2023, the Court entered an order adopting the R&R as modified by the three agreed upon conditions. (ECF No. 77.)

As indicated in the joint motion and the Court's order, Captive Alternatives and the Service engaged in discussions concerning jointly petitioning the Court

for a 502(d) order prior to the Court's March 8, 2023 Order, including the Company providing a proposed order to the Service. These discussions resumed in late March 2023 when Captive Alternatives followed up with the Service regarding its position as to the proposed order. On May 1, 2023, the Service first indicated that it opposes a 502(d) order in this case. Since that time, Captive Alternatives has attempted to find common ground with the Service through numerous email communications. *See* Exhibit B. However, the Service has declined to engage in discussions about the text of a proposed order and instead—relying primarily on a two-decade old internal IRS policy and the examination team's unsupported view that the document review and production would not be sufficiently burdensome to Captive Alternatives[3]—the Service has taken the position that a 502(d) is not necessary here. Captive Alternatives has addressed the limited substantive concerns raised by the Service with respect to the proposed order, attached hereto as Exhibit A, and has repeatedly offered to discuss any specific

---

[3] The Service's view on burden appears to stem, in part, from their position that Captive Alternatives has had sufficient time since the Summons was issued to complete the document review. However, the length of time for completing a document review has minimal effect on the cost of the review. The costs of a document review and production are largely driven by the number of attorney hours required to complete the review. The length of time will affect the number of attorneys required for the review but not the total number of attorney hours that are necessary. *See, e.g.*, *Brown* v. *Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 645 (S.D.N.Y. 2019) (noting that the average rate of document review is 40-60 documents per hour and that the review of 100,000 documents could cost as much as $500,000).

textual concerns the Service has with the proposed order. The Service has not accepted these overtures.

Captive Alternatives intends to complete its response to the Summons quickly upon resolution of the 502(d) request. However, the Service's delay in responding and general opposition to a 502(d) order have hindered the Company's efforts to scope and conduct its document review. To help prevent against the inadvertent disclosure of privileged materials, respondents, like Captive Alternatives, ordinarily conduct a document-by-document review. Here, however, it is time and cost prohibitive to conduct a document-by-document review of the approximately 1.1 million documents summonsed. Instead, the Company intends to use search terms to isolate documents that are more likely to contain privileged material for attorney review while producing the documents not hitting on search terms without attorney review. The process of developing and refining search terms necessarily involves balancing the volume of documents that is manageable to review against the risk that the set of documents that will not be reviewed contains privileged material. Therefore, while this approach will ease some of the significant burden to the Company and expedite provision of documents to the Service, it also increases the risk of inadvertent disclosure of privilege materials as a substantial volume of material will be produced without close review for privilege. As a result, a 502(d) order is necessary to avoid waiver

from the inadvertent disclosure of privilege material. The Rule was created to address this very situation.

### III. Relevant Law

Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." As a result, Rule 502(d) enables a court to establish—both for the litigation before the court and in front of other courts—the effect of disclosing privileged or protected materials.

Congress enacted the amendments to Federal Rule of Evidence 502 to respond,

> to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information.

Fed. R. Evid. 502 Advisory Committee's Notes. These costs concerns are heightened "in cases involving electronic discovery." *Id.*; *see also* Fed. R. Evid. 502(d) Advisory Committee's Notes ("Confidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery."). Further, based on these concerns, the Sedona Conference Principles—which are endorsed by the Middle

District Discovery Handbook as an excellent source of best practices for handling discovery of ESI—support the use of 502(d) orders to "protect against waiver by inadvertent production." Middle District Discovery § VIII.A.; *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, Cmt. 10.c. (2018). Rule 502(d) orders afford predictability that benefits the party producing documents by reducing costs, the party receiving documents by obtaining the documents faster, and the court by conserving judicial resources. The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 SEDONA CONF. J. 1, § III.

Importantly here, nothing in the text of the rule suggests that orders pursuant to 502(d) are contingent on an agreement of the parties. *Compare* Fed. R. Evid. 502(d) (Controlling Effect of a Court Order) *with* Fed. R. Evid. 502(e) (Controlling Effect of a Party Agreement). To the contrary, the Advisory Committee Notes addressing Rule 502(d) are clear that the consent of all parties is *not* required for an order pursuant to the rule. *See* Fed. R. Evid. 502(d) Advisory Committee's Note ("Under the rule, a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation. . . . party agreement should not be a condition of enforceability of a federal court's order."); *see also* Middle District Discovery § VI.C. (noting that a party agreement concerning waiver of privilege is ineffective unless incorporated into a court order

pursuant to Rule 502(d)). Instead, when considering whether to enter a 502(d) order, courts assess whether good cause exists for the entry of such an order.[4] *See Taylor* v. *Citizens Telecom Servs. Co., LLC*, 2020 U.S. Dist. LEXIS 246580, at *2 (M.D. Fla. Dec. 21, 2020) (finding good cause existed for the entry of a 502(d) order).

Consistent with this principle, courts frequently enter 502(d) orders without the agreement of both parties. *See, e.g.*, *Saunders v. Signature Flight Support, LLC*, 2023 U.S. Dist. LEXIS 45681, at *1 (M.D. Fla. Mar. 14, 2023) (citations omitted) (granting an unopposed motion for a 502(d) order and noting that while "the decision on whether to enter an order pursuant to Rule 502(d) is discretionary. . . . federal courts, including those in Florida, routinely enter such orders upon request of the parties."); *Estes* v. *Providence Health*, 2022 U.S. Dist. LEXIS 138032 (E.D. Wash. Aug. 3, 2022) (granting motion for 502(d) order over opposition); *United States* v. *Clarkin*, 2021 U.S. Dist. LEXIS 245650 (D.N.J. Nov. 8, 2021) (granting unopposed motion for 502(d) order); *United States* v. *Reifler*, 2021 U.S. Dist. LEXIS

---

[4] In the related context of protective orders pursuant to Federal Rule of Civil Procedure 26(c), the Eleventh Circuit employs a four-part test to determine whether good cause exists for a protective order, which includes, "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order." *Sawyer* v. *Intermex Wire Transfer, LLC*, 2019 U.S. Dist. LEXIS 230597, at *2 (S.D. Fla. Sep. 13, 2019) (quoting *Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 583 (S.D. Fla. 2014)). However, it does not appear that this test is used to determine whether good cause exists for the issuance of an order pursuant to Rule 502(d). *Compare id.* at *1–2 (applying four-part test in protective order analysis) *with id.* at *11–12 (not applying four-part test in 502(d) order analysis). Regardless, as demonstrated below, Captive Alternatives has established that good cause exists for the entry of 502(d) order as a general matter and under the specific factors that courts consider in assessing whether to enter protective orders.

106810 (M.D.N.C. June 2, 2021) (same); *Abington Emerson Capital, LLC v. Landash Corp.*, 2019 U.S. Dist. LEXIS 129232 (S.D. Ohio Aug. 2, 2019) (granting motion for 502(d) order over opposition); *Sankar v. Napleton's Palm Beach Imps., Ltd. Liab. Co.*, 2016 U.S. Dist. LEXIS 17934 (S.D. Fla. Feb. 10, 2016) (granting unopposed motion for 502(d) order); *Reagan v. United States Bank, Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 91812 (S.D. Tex. July 1, 2013) (same); *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 U.S. Dist. LEXIS 107930 (D.N.M. July 23, 2012) (granting motion for 502(d) order over opposition).

Courts have also entered 502(d) orders in cases involving the IRS, including summons enforcement matters. *See United States v. Seivers*, No. 2:20-cv-720, Dkt. No. 16 (W.D. Penn. Aug. 13, 2020); *United States v. Facebook, Inc.*, No. 3:16-cv-03777, Dkt. No. 31 (N.D. Cal. Nov. 9, 2016); *United States v. Microsoft Corp*, No. 2:15-cv-102, Dkt. No. 124 (W.D. Wash. May 25, 2016); *see also United States v. Trinity Medical Pharmacy, LLC*, No. 8:16-mc-120, Dkt. No. 10 (M.D. Fla. Nov. 18, 2016) (entering 502(d) order in enforcement matter concerning civil investigative demand issued by the Department of Justice).

Further, consistent with the purpose underlying the amendment of Rule 502(d), courts have found good cause exists for a 502(d) order based on the burden of document production. In *Rajala v. McGuire Woods, LLP*, the defendant sought the entry of a clawback provision under Rule 502(d) to cover the large volume of

10

materials to be reviewed and produced, including nearly 14,000 documents and over 18,000 emails. 2010 U.S. Dist. LEXIS 73564 (D. Kan. July 22, 2010). The Court found that good cause existed for entry of the provision over the objection of the plaintiff, in part, because "[d]iscovery in this case will include production of an extensive amount of ESI, including a large number of e-mail messages." *Id.* at *18.

And, in *S2 Automation*, the court concluded that entry of the defendant's proposed 502(d) order was appropriate, despite the plaintiff's opposition, noting "[c]onfidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery." 2012 U.S. Dist. LEXIS 107930 at *9 (quoting Fed. R. Evid. 502(d) Advisory Committee's Notes). The court elaborated that the "case has largely gotten off track based on discovery disputes such as this one" and explained that the order "is non-controversial, given that it applies only to privileged information and work product." *Id.* at *10; *see also Ranger Constr. Indus.* v. *Allied World Nat'l Assurance Co.*, 2019 U.S. Dist. LEXIS 18617, at *6 n.2 (S.D. Fla. Feb. 5, 2019) (citing the cost of privilege review and encouraging counsel "in all cases involving e-discovery to consider the benefits of jointly entering into a 502(d) claw-back agreement and/or an ESI Protocol Agreement early on in the case.").

## IV. Argument

The text, Advisory Committee Notes, and case law applying Rule 502(d) all support the Court entering an order pursuant to that rule in this case.

The decision whether to enter a Rule 502(d) order is firmly within the Court's discretion—the agreement of the non-moving party is <u>not</u> required. Particularly here, where document production obligations only flow in one direction, opposition from the IRS should not carry weight with the Court. Captive Alternatives is the only party that must be concerned with waiving a privilege or protection as part of discovery in this matter and is the only party incurring substantial costs through the review and production of voluminous records. *See* The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 SEDONA CONF. J. 1, Section IV. A. (2022) (noting that the ability to enter 502(d) orders without the consent of both parties is important because "requesting parties in, e.g., asymmetric lawsuits may not be inclined to agree to a Rule 502(d) order because they will not benefit from its protections."). A 502(d) order benefits the Company by reducing some of the risk and expenses occasioned by compliance with the Service's Summons. Conversely, a 502(d) order would not prejudice the IRS—in fact, such an order will likely result in the Service receiving documents more expediently. And a 502(d) order serves the interest of judicial economy.

The burden and costs of review and production are key considerations for courts assessing whether good cause exists for a 502(d) order. Here, again, compliance with the Summons will require the production of over 1.1 million documents that consist of emails and other electronically stored information. The cost of conducting a document-by-document review of that entire set would likely stretch into the low seven figures. *See Barnes & Noble*, 474 F. Supp. 3d at 645 (noting that the review of 100,000 documents could cost as much as $500,000). It cannot be credibly argued that the burden to Captive Alternatives is insubstantial. *See, e.g., Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1039 (N.D. Ill. 2009) (noting, in the related Rule 502(b) context, that the collection of 72,000 *pages* of potentially responsive documents from which only 40,000 *pages* of document were to be produced "substantially exceed[s] the number of documents that have been characterized as 'large'") (citations omitted) (emphasis added); *see also Rajala*, 2010 U.S. Dist. LEXIS 73564 at *18 (finding good cause for the entry of a 502(d) order based on the "extensive amount of ESI," which included nearly 14,000 documents and over 18,000 emails).

Moreover, courts have also cited the benefits of 502(d) orders in cases involving frequent discovery disputes. *See In re Google RTB Consumer Privacy Litig.*, 2022 U.S. Dist. LEXIS 142957, at *7 (N.D. Cal. Aug. 10, 2022) (entering a 502(d) order over objection and noting "[w]hile such an order may be unnecessary

13

in cases where privilege disputes are likely to be few and easily addressed, or where the parties have demonstrated the ability to cooperatively resolve disputes without the Court's intervention, this is not such a case"); *S2 Automation*, 2012 U.S. Dist. LEXIS 107930 at *10 (noting that the case had "largely gotten off track based on discovery disputes" before entering a 502(d) order over objection). Here, the history of this litigation suggests that further discovery disputes are nearly certain. The Court need look no further than the motion currently before it. As seen in Exhibit B, Captive Alternatives tried to find common ground with the Service on the text of a proposed, joint order. However, the Parties could not agree on whether such an order was even necessary, much less what the order should say.

Captive Alternatives is committed to fully complying with the Court's order and completing its document production obligations. Given the substantial volume of materials to be produced, good cause exists for an order providing for non-waiver and the ability to claw back inadvertently produced materials. Such an order will provide important protections to the Company that will help to streamline and facilitate its production obligations while not prejudicing either party or the Court.

## V.     Conclusion

Captive Alternatives respectfully requests that the Court enter the proposed order providing for non-waiver and clawback of privileged materials pursuant to Federal Rule of Evidence 502(d).

## Certificate of Compliance with Rule 3.01(g)

Counsel for Captive Alternatives hereby certify that they have conferred with Counsel for the Service by email prior to the filing of this Motion, and the Service opposes the relief requested by the motion.

Date: June 12, 2023                              **MCGUIREWOODS LLP**

By: /s/ *Kimberly T. Mydock*
R. Eric Bilik (FL Bar No. 0987840)
ebilik@mcguirewoods.com
Kimberly T. Mydock (FL Bar No. 0100571)
kmydock@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

and

Brandon M. Santos *(Admitted Pro Hac Vice)*
bsantos@mcguirewoods.com
Bradley A. Ridlehoover *(Admitted Pro Hac Vice)*
bridlehoover@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, Virginia 23219
Tel: (804) 775-4745

*Attorneys and Trial Counsel for Respondent Captive Alternatives, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2023, I electronically filed the foregoing by using the Court's CM/ECF system which will send a notice of electronic filing to the following counsel of record:

Daniel A. Applegate, Esq.
daniel.a.applegate@usdoj.gov
US Department of Justice – Tax Division
555 Fourth St NW – Ste 8721
P.O. Box 7238
Washington, DC, 20044-7238

Lauren Darwit, Esq.
lauren.a.darwit@usdoj.gov
U.S. Department of Justice – Tax Division
P.O. Box 7238
Washington, DC 20044-7238

                    */s/ Kimberly T. Mydock*
                    Attorney