UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

v.                                       Case No. 8:22-cv-406-TPB-CPT

CAPTIVE ALTERNATIVES, LLC,

    Respondent.
_____/

**O R D E R**

Before the Court are Respondent Captive Alternatives, LLC's (Captive) *Motion for Non-Waiver and Clawback Order* (Doc. 78) and Petitioner United States'[1] response in opposition (Doc. 80). After careful review and with the benefit of oral argument, Captive's motion is denied.

I.

The procedural history of this case is recounted in detail in a prior decision of the Court and need only be summarized here. *See* (Docs. 71, 77). Captive operates a risk management program that allows businesses directly to procure insurance

---

[1] Although the Department of Justice's Tax Division filed the government's response, the Petitioner will be referred to herein as the Internal Revenue Service (IRS) because it is the "real party in interest." *United States v. Moore, Ingram, Johnson & Steele, LLP*, 2022 WL 3134374, at *1 n.1 (11th Cir. Aug. 5, 2022) (per curiam).

coverage. (Doc. 51-1 at ¶¶ 4, 5). In October 2021, the IRS served Captive with an administrative summons (Summons) (Doc. 1-2) pursuant to 26 U.S.C. § 7602 seeking the disclosure of twenty-nine categories of records, plus subparts, for the time period beginning on January 1, 2011. (Doc. 1-2; Doc. 51-1 at ¶ 13; Doc. 51-2 at ¶ 14). When Captive failed to respond, the IRS filed a petition in February 2022 to enforce the Summons. (Doc. 1).

After evaluating that submission, which included a declaration by an IRS Revenue Agent, the undersigned determined that in accordance with the analytical framework enunciated by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964), the government made a *prima facie* showing that (1) "the [IRS's] investigation [was] being conducted for a legitimate purpose;" (2) "the sought-after documents [might] be relevant to that purpose;" (3) "the requested information [was] not already within the IRS's possession;" and (4) "the administrative steps required by the Internal Revenue Code ha[d] been substantially followed." (Doc. 4). The undersigned therefore directed Captive to show cause at a hearing ultimately set for August 2022 as to why it should not be compelled to comply with the Summons. (Docs. 4, 42).

Following the show cause hearing and after further briefing by the parties, the undersigned issued a report and recommendation (R&R) recommending that the presiding District Judge largely grant the IRS's petition and instruct Captive to produce (i) all responsive documents and materials, other than correspondence or records of communications, within forty-five days of the Court's Order; and (ii) all non-privileged correspondence or records of communications within sixty days of the

Court's Order, along with a privilege log. (Doc. 71).² In arriving at this recommendation, the undersigned determined, *inter alia*, that Captive had not met its "heavy burden" of disproving the four *Powell* factors described above. *Id.*

One month after the R&R's issuance, the parties filed a joint motion requesting that the presiding District Judge adopt the R&R, with the minor caveats that Captive be permitted to "make document productions on a rolling basis," and that the covered "time period from which Captive . . . must produce responsive documents . . . be modified to January 1, 2011[,] through February 28, 2023." (Doc. 76). Of significance here, the parties also included the following additional caveat:

> The parties are discussing whether an order pursuant to Federal Rule of Evidence 502 may be appropriate. Therefore, the parties will negotiate, in good faith, proposed language for such an order, and, if successful, jointly petition the [C]ourt for the entry of such an order. If the parties are unsuccessful and fail to reach an agreement on proposed language for such an order, the parties agree that [Captive] will retain its ability to petition the [C]ourt in its own right for the entry of such an order. [The IRS] agrees that [Captive] may file a petition seeking such an order.

*Id.* The presiding District Judge subsequently issued an Order adopting the R&R subject to these conditions and directed that Captive disclose the requested items and a privilege log by October 1, 2023. (Doc. 77).

Since the entry of the District Judge's Order, the parties have been unable to reach an agreement regarding the Rule 502(d) issue, which has led to the instant

---

² The R&R exempted from this production requirement those documents that Captive had already turned over, or caused to be turned over, to the IRS's civil examination team after the Summons was issued. (Doc. 71).

motion being filed by Captive. By way of that submission, Captive asks the Court to enter a Rule 502 order providing for the non-waiver and "claw back" of any privileged materials Captive turns over to the IRS. (Docs. 78, 78-1). Specifically, Captive requests that the Court issue an order (1) authorizing Captive "to produce summonsed materials to the IRS without first reviewing every record for privilege;" (2) stating that Captive would not be deemed to waive any privilege or protection as a result of such disclosures in connection with the litigation pending before the Court or "in any other federal or state proceeding;" (3) precluding the IRS and the Department of Justice's Tax Division from "mak[ing] any public use of any document produced pursuant to the Summons without first giving Captive . . . ten days advance notice;" and (4) allowing Captive thereafter to assert a claim of privilege in writing within ten days, which would then foreclose the government from making any public use of the document until the privilege question was resolved either by the parties or the Court. (Doc. 78-1) (footnote omitted). In support of this proposed order, Captive explains that the items it must deliver to the IRS "total over 1.1 million," and that the protections it seeks are necessary given the "costs associated with reviewing and producing such a significant volume of documents and the near inevitability of making mistakes in doing so." (Doc. 78 at 2–3). The IRS opposes Captive's motion. (Doc. 80).

II.

The legal principles governing this action are also set forth in the Court's prior decision (Docs. 71, 77) but bear repeating here, at least in part. The IRS has "'broad'

and 'expansive" authority to investigate and to issue administrative summonses pursuant to 26 U.S.C. § 7602. *Moore*, 2022 WL 3134374, at \*2 (quoting *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985)); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 816–17 (1984); *United States v. Euge*, 444 U.S. 707, 716 n.9 (1980). The purpose of this extensive investigative license afforded the IRS "is not to accuse, but to inquire." *United States v. Bisceglia*, 420 U.S. 141, 145–46 (1975). Consistent with this purpose, summons enforcement proceedings are considered to be "summary in nature." *United States v. Clarke*, 573 U.S. 248, 253–54 (2014) (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)).

To safeguard against any abuse of this authority, the judiciary—not the IRS—is charged with enforcing IRS summonses. *Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018). The judiciary's responsibilities in carrying out this duty center around analyzing the four *Powell* factors. *Id.* at 1288–89 (citing *Powell*, 379 U.S. at 57–58). Ultimately, however, a court's function in enforcement proceedings is "narrowly circumscribed" and is essentially limited to asking "whether the 'IRS issued a summons in good faith.'" *Id.* at 1289 (quoting *United States v. Clarke*, 573 U.S. 248, 254 (2014)). A court's role does not include "oversee[ing] the [IRS's] determinations to investigate,'" *id.* (quoting *Clarke*, 573 U.S. at 254), nor does it include "dictat[ing] how the IRS must conduct [its] investigation" or requiring the IRS to proceed by the "least intrusive way possible," *United States v. Greenberger*, 2016 WL 3912065, at \*8 (N.D. Ga. Jan. 11, 2016) (internal quotation marks and citations omitted), *report and*

5

*recommendation adopted*, 2016 WL 3912060 (N.D. Ga. June 21, 2016).  Additionally, because enforcement proceedings are not intended to "address the question of liability or wrongdoing," courts ordinarily do not permit discovery in such matters.  *Id.* at *13 (collecting cases); *see also Axis v. U.S. I.R.S.*, 522 F. Appx 770, 778 (11th Cir. 2013) (per curiam) ("Summons enforcement proceedings should be summary in nature, and discovery should be limited.") (quoting *United States v. Stuart,* 489 U.S. 353, 369 (1989)); *United States v. Judicial Watch, Inc.*, 371 F.3d 824, 830 (D.C. Cir. 2004) (rejecting the respondent's argument that it was entitled to discovery and an evidentiary hearing regarding the IRS's motive for an audit because the respondent failed to show "extraordinary circumstances").

Despite their broad scope, enforcement proceedings are nonetheless "subject to the traditional privileges and limitations." *Arthur Young & Co.*, 465 U.S. at 816 (citation and quotation marks omitted).  A respondent asserting a claim of attorney-client privilege must "generally" declare it "on a question-by-question and document-by-document basis," rather than through a categorical privilege log.  *Moore*, 2022 WL 3134374, at *4.

A "claw back" arrangement—like the one sought by Captive here—"allow[s] the return of documents that a party belatedly determines are protected by the attorney-client privilege or [the] work product" doctrine.  *Rajala v. McGuire Woods, LLP*, 2010 WL 2949582, at *3 (D. Kan. July 22, 2010).  Such arrangements are governed by Rule 502, which authorizes a court to enter an order directing that attorney client or work product protections are not waived "by disclosure connected with the [pending]

litigation," which, in turn, prevents the disclosure from constituting a waiver "in any other federal or state proceeding." Fed. R. Evid. 502(d). As a result, once a court issues a Rule 502(d) order, the producing party can typically "claw back" a protected document that it produced to the receiving party. *See Ranger Constr. Indus., Inc. v. Allied World Nat'l Assurance Co.*, 2019 WL 436555, at *2 n.2 (S.D. Fla. Feb. 4, 2019).

"[C]lawback orders are staples of modern complex commercial litigation," *S2 Automation LLC v. Micron Tech., Inc.*, 2012 WL 3150387, at *4 (D.N.M. July 23, 2012) (citation omitted), and are regularly entered by courts in civil matters upon the parties' joint request, *Diaz v. Chapters Health Sys., Inc.*, 2019 WL 1498873, at *1 (M.D. Fla. Apr. 1, 2019) (collecting cases). A court may also enter a Rule 502(d) order over a party's objection. *See* Fed. R. Evid. 502(d), advisory committee notes ("Under the rule, a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation. Party agreement should not be a condition of enforceability of a federal court's order.").

That said, at least one court has taken a dim view of claw back arrangements in the context of enforcement proceedings where the IRS has not acquiesced to such a framework. *See, e.g., United States v. Artex Risk Solutions, Inc.*, 2014 WL 4493435, at *5 (N.D. Ill. Sept. 11, 2014). In *Aretx*, the court rejected the respondent's arguments that the IRS should be compelled to follow this type of approach, explaining:

> [The respondent] contends that it needs to be protected from inadvertent disclosures. However, as [the United States] correctly points out, there is no requirement that the IRS enter into a Rule 502 [a]greement. . . . [The respondent] also argues that a Rule 502 agreement would have been

> a "reasonable accommodation" by the IRS. However, the IRS's obligations are not governed by what [the respondent] believes to be reasonable and proper. [The respondent] is required by law to provide the necessary information to the IRS regardless of [the respondent's] opinion as to what the most reasonable method for production would be. [The respondent additionally] presents extensive arguments as to why the IRS's reasoning for not entering into a Rule 502 agreement is flawed and how the IRS will not be prejudiced by such an agreement. . . . However, it is for the IRS to decide whether it will enter into such an agreement, and the court will not review the IRS's reasoning for such a decision. [The respondent] cannot force the IRS to enter into such an agreement. Nor can [the respondent] use the absence of a Rule 502 agreement as an excuse for refusing to provide the IRS with the requested information.

*Id*. (internal citation omitted)

In the end, the decision of whether to enter a Rule 502(d) order is left to a court's sound discretion. *See Proxicom Wireless, LLC v. Target Corp.*, 2020 WL 1671326, at *1 (M.D. Fla. Mar. 25, 2020).

Against this backdrop, Captive's motion fails. To begin, as the IRS emphasizes, the instant proceeding is summary in nature and does not involve discovery as that term is understood in civil litigation. *Clarke*, 816 F.3d at 1316–17; *Greenberger*, 2016 WL 3912065, at *13. This action is thus distinct from other matters in which courts traditionally enter Rule 502(d) orders at a party's request or for "good cause" shown. *See, e.g., Rajala*, 2013 WL 50200, at *4 (determining that a claw back provision was appropriate for good cause shown); *Diaz*, 2019 WL 1498873, at *1 (entering a Rule 502(d) order upon the parties' joint request). Indeed, it appears that had Captive

8

complied with the Summons upon receiving it, the IRS would not have initiated this proceeding and Rule 502(d) would not have come into play at all.[3]

Undeterred, Captive points out—and the government acknowledges—that the IRS has agreed to the entry of a Rule 502(d) order in a few other proceedings. In *United States v. Microsoft Corp.*, No. 2:15-cv-102, at (Doc. 124) (W.D. Wash. May 25, 2016), for example, the IRS agreed that Microsoft could produce documents to the IRS which Microsoft knew or suspected were privileged, so that the IRS could take a "quick peek" at those materials without Microsoft waiving the privilege. (Doc. 80-1). Similarly, in *United States v. Facebook, Inc.*, No. 3:16-cv-3777, at (Doc. 31) (N.D. Cal. Nov. 9, 2016), the IRS apparently agreed to a Rule 502(d) order so that it could conduct a "quick peek" at records which Facebook had previously identified as protected. (Docs. 80 at 14–15; 80-2).[4]

These cases are distinguishable. In both actions, Microsoft and Facebook had already determined the privileged nature of the documents to which the claw back orders applied. Further, in *Microsoft*, the parties' claw back agreement did not—as Captive proposes it be permitted to do here—entitle Microsoft to produce carte blanche all items responsive to the IRS's summons with the ability to assert a privilege over the disclosed documents at some unspecified later date. (Docs. 80 at 14; 80-1).

---

[3] The Court is unpersuaded by Captive's related assertion that a Rule 502(d) order is necessary in this action to fend off "frequent discovery disputes" in the future. (Doc. 78 at 13–14). In the wake of the Court's ruling on the enforceability of the Summons and this instant motion, there should be little, if anything, for the Court to decide moving forward.

[4] This characterization of the Rule 502(d) order in *Facebook* is predicated upon the government's representation regarding same. *See* (Doc. 80 at 15–16).

Beyond these distinctions, *Microsoft* and *Facebook* appear by far to be the exception rather than the rule.[5] The IRS provides several reasons why this may be so. The first is reflected in guidance offered by the IRS's Chief Counsel's office, which takes the position that claw back arrangements "should be avoided" due to the problems they can cause.[6] *See* Chief Counsel Notice CC-2009-023 (Chief Counsel Notice) found at https://www.irs.gov/pub/irs-ccdm/cc-2009-023.pdf (last visited Aug. 29, 2023). As pertinent here, one of the concerns identified in the Chief Counsel Notice is that when the IRS enters into a Rule 502(d) agreement with a party whose activities are under investigation, the IRS—as the receiving party—bears the burden of "identifying potentially privileged documents and [then] giving notice to the producing party that the produced documents contained privileged or protected information." *Id.*

This, in fact, is precisely the approach Captive contemplates here. Its proposed Rule 502(d) order would "authorize[ it] to produce summonsed materials to the IRS without first reviewing every record for privilege" (Doc. 78-1), thereby seemingly relieving Captive of any responsibility for designating protected records as such before turning them over to the IRS, *see Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *3

---

[5] The IRS represents that *Microsoft* and *Facebook* are the only two instances where a Rule 502(d) order has been entered in a summons enforcement proceeding. (Doc. 80 at 14). A third matter cited by Captive, *United States v. Seivers*, No. 2:20-cv-720-DSC, at (Docs. 1, 16) (W.D. Penn. May 19, 2020), seemingly involved a complaint seeking unpaid tax penalties, as opposed to the enforcement of a summons.

[6] Rule 502 applies in Tax Court. *See* https://www.irs.gov/pub/irs-ccdm/cc-2009-023.pdf (last visited Aug. 29, 2023).

10

(W.D. Pa. Feb. 26, 2019) (recognizing the concern that a Rule 502(d) "'not be used as a cost-shifting tool allowing the producing party to make a 'data dump' and requiring the requesting party to identify privileged documents'") (quoting *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 SEDONA CONF. J. 95, 136 (2016)). This, in turn, would leave it to the IRS to discern whether a document disclosed by Captive contained privileged information, assess whether its disclosure to a "third party" could defeat that privilege, and so inform Captive if it would. Such notice could then provide Captive—the entity being investigated—with insight into the particulars of the IRS's inquiry, including the entities and/or individuals with whom the IRS wishes to share the summonsed materials. (Doc. 80 at 8–9). Not surprisingly, the IRS represents that this procedure "may impede [its] investigation." *Id.* at 9.

Captive's sought-after Rule 502(d) order poses other concerns as well. As the IRS highlights, unlike a civil proceeding where each side's attorneys would review the items exchanged, the IRS agents investigating Captive are not trained to evaluate whether a communication is subject to the attorney client privilege.[7] *Id*. at 13. As a result, the "potentially privileged nature" of certain communications might not be "readily apparent to [those] agents." *Id.* at 14. Further compounding this problem is that the information needed to make such determinations may be solely within Captive's possession. *Id*. at 13–14.

---

[7] The IRS attests in this respect that although it is represented in this proceeding by the Justice Department, that representation is limited to the enforcement proceeding and does not encompass the review of records Captive turns over, except to the extent such review relates to a motion for contempt. (Doc. 80 at 13 n.6).

11

An additional issue with Captive's requested Rule 502(d) order is its requirement that the IRS not "make any public use" of the disclosed records without first affording Captive ten days' notice. (Doc. 78-1 at 3). Originally, Captive defined "public use" vaguely as "any disclosure to a third party that could defeat a claim of privilege or other protection" but that did not limit "intra-agency use or disclosure of documents." *Id.* at 3. In a recent "status update,"[8] however, Captive revised its definition of "public use" to encompass:

> [P]roviding a third party with physical possession of a document and/or the publication of any document, including through the filing of any document on a public docket. It does not include the use or disclosure of a document during an interview conducted in the course of the IRS's examination, so long as the interviewee is not allowed to retain physical possession of said document following the interview. Nothing [in] this definition limits intra-agency use or disclosure of documents produced pursuant to this Order. And the IRS remains subject to the limitations on disclosure imposed by 26 U.S.C. § 6103.

(Docs. 84, 84-1).

Despite this newly proposed modification, the above language would still seemingly prohibit the IRS from using the documents Captive produces during a separate proceeding without first notifying Captive and permitting Captive an opportunity to assert a privilege. This, in turn, could force the IRS to abandon its use of that record in the separate proceeding, including a separate proceeding brought by the IRS to enforce penalties against Captive.

---

[8] This filing was submitted without leave of the Court.

Captive's proposed Rule 502(d) order is problematic in another respect as well. As the IRS observes, the order places no temporal restriction on when Captive may designate a document as privileged. (Doc. 80 at 16). Accordingly, Captive could theoretically challenge the IRS's use of the materials *years* after their production. *Id.* at 17. Such an unlimited time frame could likewise be read to oblige the Court to retain jurisdiction indefinitely over any dispute regarding the use of such information. The Court is disinclined to take on such an unbounded commitment.

In an effort to overcome these concerns, Captive—as alluded to above—asserts that there are over 1.1 million responsive documents consisting primarily of emails and other electronically stored information and estimates that "conducting a document-by-document review of that entire set would likely stretch into the low seven figures." (Doc. 78 at 2, 13). The Court, however, has already rejected Captive's objection to the Summons on the grounds that complying with it would be burdensome. (Doc. 71 at 14, 18) (concluding that "[t]he fact that Captive's compilation and inspection of these documents may be burdensome does not defeat the Summons," despite Captive's argument that it would be forced to conduct an "extensive privilege review"); (Doc. 77) (adopting this analysis and directing that Captive disclose the responsive items by October 1, 2023).

Captive alternatively suggests that the IRS violated the terms of the parties' agreement by failing to "substantively negotiate" the terms of a proposed Rule 502(d) order with Captive. (Doc. 78 at 2). This contention is unavailing. In waiving any objections to the R&R, the parties informed the Court in their joint notice that they

13

were "*discussing* whether an order, pursuant to [Rule] 502, *may* be appropriate." (Doc. 76) (emphasis added).  The parties further advised that if those conversations proved unsuccessful, Captive could seek relief with the Court. *Id.*

Consistent with these representations, the IRS attests in its response that at the time the presiding District Judge adopted the R&R:

> [T]he [IRS] was still considering [the matter of the proposed 502(d) order], which is why [it] could not commit to agreeing to [one].  Contrary to [Captive's] representations, the [IRS] continued to discuss and consider this matter in good faith.  [The IRS] considered the relevant law and [its] policies (*see* IRS Chief Counsel Notice), discussed this with [Captive], and considered [Captive's] claimed need for an order.  But, as discussed [in the IRS's response], there is no basis to enter into such an agreement.  This is not acting in bad faith.

(Doc. 80 at 5) (footnote omitted).  In light of these attestations and the above language in the parties' joint notice, Captive's claim that the IRS breached its agreement with Captive is unsupported.

### III.

For the reasons set forth above, Captive's *Motion for Non-Waiver and Clawback Order* (Doc. 78) is denied.

SO ORDERED in Tampa, Florida, this 29th day of August 2023.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record